# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3725 | **DATE** | AUG 0 6 2001 |
| **CASE TITLE** | Anderson, et al. vs. New Dimension Financial, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation recommending that Plaintiffs' Motion for Class Certification [11-1] be denied is hereby entered of record. Status hearing set for September 5, 2001 at 10:00 a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| ✓ | Copy to judge/ ~~magistrate judge~~. | |

number of notices

date docketed AUG 0 7 2001

docketing deputy initials

date mailed notice

**Document Number**

33

KMc

courtroom deputy's initials

FILED FOR DOCKETING
01 AUG -6 PH 2: 09

Date/time received in central Clerk's Office

mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TODD and TERRI ANDERSON, and JOHN and )
SHEILA TEICHMAN, each individually and on )
behalf of others similarly situated, )
                   )
         Plaintiffs, )
                   )
                   )
            v. )
                   )
NEW DIMENSION FINANCIAL SERVICES, )
L.P., et al. )
                   )
         Defendants. )

AUG 07 2000

Case No. 00 C 3725

Judge Ronald Guzman

Magistrate Judge Nan R. Nolan

## REPORT AND RECOMMENDATION

This case, filed by Plaintiffs under the Real Estate Settlement Procedures Act (RESPA)[1],12

U.S.C. § 2607(b), concerns the origin of home purchase loans used by Plaintiffs to finance the

purchase of new homes in a recently developed subdivision, Algonquin Hills. It involves Defendant

New Dimension Financial Services, a mortgage broker, home builder Kimball Hill, Inc. who

developed the subdivision Algonquin Hills, and Defendant CTX Mortgage Corporation, a lender.

This matter is now before the Court on Plaintiffs' Motion for Class Certification. In this motion,

Plaintiffs move to certify a class which is defined as all people "who purchased a home from

---

[1]At its core, "RESPA is an anti-kickback statute." <u>Mercado v. Calumet Fed. Sav. & Loan Ass'n</u>, 763 F.2d 269, 270-71 (7th Cir.1985). Its purpose is to "prohibit all kickback and referral fee arrangements whereby any payment is made or 'thing of value' furnished for the referral of real estate settlement business." <u>Id.</u>

Kimball Hill, which home was purchased through a mortgage loan brokered by New Dimension, the first payments of which were tendered to CTX Mortgage." (Pls.' Compl. ¶ 30.) Defendants assert that Plaintiffs have failed to meet the standards of Federal Rule of Civil Procedure 23(a) or(b). For the following reasons, the Court recommends that Plaintiffs' motion be DENIED.

## I. Background

In support of their motion, Plaintiffs assert the following facts.[2] Plaintiffs Sheila and John Teichman and Terri and Todd Anderson were all in the market for a new home in 1998. In late 1998 both couples shopped for a new home in a subdivision developed by Defendant Kimball Hill, (Kimball), in Algonquin, Illinois. Kimball referred both couples to Defendant New Dimension Financial Services (New Dimension) to assist them in financing their new homes. The saleswomen who gave the referrals had Plaintiffs sign a form entitled Affiliated Business Disclosure Form, which is required by RESPA when one business refers customers to another under common ownership or management for "settlement services." These disclosure forms contain estimates for appraisal fees, credit report fees, and tax service fees, however, Plaintiffs contend that estimates were incorrect. Plaintiffs assert that Kimball had access to all of the HUD-1 forms which contained the actual fees charges by New Dimension, and that it therefore should have been able to accurately report the correct fee amounts.

Plaintiffs also claim that, while they technically had months in between their initial meeting and the closing date to shop around for the best terms, New Dimension ensures that its borrowers do not avail themselves of that opportunity. Plaintiffs maintain that at the initial meeting, clients of

[2]These facts are all drawn from Plaintiffs' Motion for Class Certification.

New Dimension are asked to sign a "Loan Interest Rate Agreement" which provides for a penalty of 1% of the loan amount should the client ask for a lender other than the one obtained by New Dimension. (Plaintiff's Exs. I, J.) New Dimension also, according to Plaintiffs, has new clients sign a "Loan Brokerage Disclosure Statement and Agreement" which gives New Dimension the exclusive right to arrange the terms of the borrower's mortgage loan.

Plaintiffs assert that New Dimension and CTX Mortgage ("CTX") have a very close relationship. According to Plaintiffs, "[t]he procedures of New Dimension's Office were set up, its personnel trained, and computerized records and communication equipment installed by CTX Mortgage." (Pls.' Mot. at 4.)[3] Plaintiffs also argue that New Dimension assigns most of its loans to CTX mortgages, roughly 800 out of 1300 across the country in the year prior to the Complaint being filed. (Id.) Plaintiffs' loans were among this majority which were assigned to CTX. According to Plaintiffs, CTX's parent, Centex Corporation ("Centex") indicated that CTX is not interested in retaining and servicing loans, but only in providing the original funding and collecting the initial interest payments. Plaintiffs claim that CTX is in the "interest arbitrage business" and not in the "mortgage servicing business."

Plaintiffs also contend that they were not given an "affiliated business disclosure" form by New Dimension or Kimball revealing that New Dimension referred the funding of the mortgage to CTX. Plaintiffs argue that if Defendants allege that New Dimension funded the loan itself, the evidence refutes that claim. Plaintiffs assert that New Dimension does not have the cash to fund the loans, and draws from a line of credit to acquire cash for the closing, that CTX collects the interest

---

[3]Plaintiffs note that they are not clear whether it was CTX Mortgage Ventures or its parent corporation, CTX Mortgage, which was so closely related to New Dimension.

on the capital from the loans after they are closed, and that New Dimension calls itself a mortgage broker and has never represented itself to be a lender. Plaintiffs speculate that further discovery may reveal whether any commission paid by CTX to New Dimension was ever passed along to Kimball in the form of a partnership draw. (Pls.' Mot. at 6.)

Based upon these allegations Plaintiffs allege three claims against Defendants, two statutory and one common law: (1) Breach of fiduciary duty against New Dimension and its general partner CTX (Count III of the Complaint) to which is appended a participation count directed against CTX (Count IV); (2) violations of the uniform state deceptive business acts and practices statutes ("UDAP") (Count II); and (3) violations of RESPA's antitrust provisions, and specifically its provisions regarding affiliated business relationships and its anti-kickback provisions for referrals of settlement services, 12 U.S.C. § 2607 (Count I).

In response to these allegations, Defendants agree that CTX Ventures is the general partner of New Dimension and that Kimball Hill's subsidiary, Kimball Hill Financial Holding Company (KHFHC), is the limited partner in New Dimension. Defendants claim, however, that New Dimension may either act as a mortgage lender or a mortgage broker in any given mortgage loan transaction, depending upon a number of factors such as "market pricing, product availability, underwriting flexibility and service." (Defs.' Resp. at 2.) In cases where New Dimension brokers a loan to another mortgage lender, New Dimension does not fund the loan. In those cases, the loan is funded at closing by the mortgage lender that accepts the borrower's loan application. When New Dimension does fund a mortgage loan, it uses the independent line of credit it holds with Bank One. When New Dimension funds a mortgage loan, it then sells the loan to CTX Mortgage pursuant to the parties' Mortgage Loan Purchase Agreement.

4

## II. Standards for Class Certification Under Federal Rule of Civil Procedure 23

The court has broad discretion to resolve whether certifying a class is proper. Keele v. Wexler, 149 F.3d 589, 592 (7th Cir.1998). When determining if certification is appropriate, the allegations in the complaint are taken as true and, generally, the ultimate merits of the case are not examined. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir.1981)(cert. denied, 455 U.S. 1017 (1982)). However, the "boundary between a class determination and the merits may not always be easily discernible," Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 599 (7th Cir.1993), "because determining the propriety of class certification generally depends on factors "'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Id. at 598 (quoting General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).

To achieve certification under Rule 23, plaintiff must first meet the four requirements of Rule 23(a): 1) class is so numerous that joinder of all members is impracticable (numerosity); 2) there are questions of law or fact common to the class (commonality); 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and 4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). Rosario v. Livaditis, 963 F.2d 1013, 1017 (7th Cir.1992) (cert. denied, 506 U.S. 1051 (1993)). If the plaintiff satisfies all of these requirements, she then must meet one of Rule 23(b)'s requirements. Retired Police Association v. City of Chicago, 7 F.3d 584, 596 (7th Cir.1993). In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

## III. Analysis

Plaintiffs must meet both the requirements of Rule 23(a) and Rule 23(b)(3) as to each of their claims in order to succeed in their motion for class certification. As the parties make few claim-specific arguments regarding the requirements of Rule 23(a), the Court's analysis of these elements applies to all claims.

### A. Requirements of Rule 23(a)

### (1) Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." In their answers to Plaintiffs' First Requests for Admission by admitting that since June 20, 1999 Defendants conceded that New Dimension assigned to CTX Mortgage roughly 786 loans made by New Dimension for homes built by Kimball. In light of those numbers, the Court concludes that the numerosity requirement is satisfied. See, e.g., Swanson v. American Consumer Indus., 415 F.2d 1332, 1333 n.9 (7th Cir. 1969) (40 class members sufficient); Rossetto v. Pabst Brewing Co., Inc., 71 F. Supp.2d 913 (E.D. Wis. 1999) (45 retirees satisfied numerosity requirement).

### (2) Commonality

Rule 23(a)(2) requires a showing that the class has common questions of law or fact. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Rosario v. Livaditis 963 F.2d 1013, 1018 (7th Cir. 1992), cert. denied, 506 U.S. 1051 (1993). A common nucleus of operative fact is typically found were "defendants have engaged in standardized conduct towards members of the proposed class . . . ." Keele v. Wexler, 149 F.3d 589,

594 (7th Cir. 1998). Some variation among the claims of the individual class members does not defeat commonality. Rosario, 963 F.2d at 1017. "There need only be a single issue [of law or fact] common to all members of the class." Gomez v. Illinois State Bd. of Educ., 117 F.R.D. 394, 399 (N.D. Ill. 1987) (quoting Edmondson v. Simon, 86 F.R.D. 375, 380 (N.D. Ill. 1980)).

Common factual and legal questions in the present case include: (1) whether CTX Mortgage came to be the lender to the class members through a post-settlement assignment or by a referral from New Dimension prior to the settlement of the loans; (2) whether Section 8(c)(4) of RESPA allows a claim for liability for fee estimates that prove not to match with the fees ultimately charged at closing; and (3) whether RESPA prohibits a lender from charging document preparation and underwriting fees when it contracts out those services to third party provider. The commonality requirement has been met here because the claims of Plaintiffs and the proposed class members arise from the same practices of Defendants, namely New Dimension and CTX's alleged failure to provide a § 2607(c) written disclosure of their affiliated business arrangement, Kimball Hill's allegedly inaccurate estimates of New Dimensions's fees, and New Dimension's charges to borrowers for services which were provided by another party.

**(3) Typicality**

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. The question of typicality is "closely related" to the question of commonality. Rosario, 963 F.2d at 1018. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (quoting H. Newberg, Class Actions § 1115(b) at 185 (1977)).

Typicality may be found even where "there are factual distinctions between the claims of the named plaintiffs and those of other class members." Id. "Instead, we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)." Rosario, 963 F.2d at 1018; Wagner v. Nutrasweet Co., 95 F.3d 527, 534 (7th Cir. 1996) (indicating typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses it might have against certain class members.").

In evaluating this requirement, the Court's focus is on Defendants' conduct and the Andersons' and Teichmans' legal theories. Defendants object to the Andersons' ability to represent the class as to the RESPA claims. Defendants argue that the Andersons are not members of the RESPA class they purport to represent because their transaction did not take place within the class period. This class is made up of borrowers whose transaction took place within the one-year period prior to the filing of the complaint, which is consistent with the one-year statute of limitations for RESPA actions. The Complaint was filed on June 23, 2000, however, the Andersons' transaction closed on May 28, 1999, thirteen months prior to the filing of the Complaint.

Plaintiffs respond by asserting that RESPA's one-year statute of limitations may be equitably tolled until the Andersons actually discovered CTX Mortgage's affiliation with New Dimension. Lawyers Title v. Dearborn Title Corp., 118 F.3d 1157, 1166-67 (7th Cir. 1997). Plaintiffs assert that Defendants had an affirmative duty to reveal CTX Mortgage's role in the referral of the loan, but failed to make that disclosure, and therefore fraudulently concealed the information necessary for the Andersons to be aware of their claim. Defendants counter that Plaintiffs have failed to allege any basis for equitable tolling of RESPA's statute of limitations, citing to DeBrunner v. Midway Equipment Co., 803 F.2d 950, 952 (8th Cir. 1986) and Rashidi v. American President Lines, 96 F.3d

8

124, 128 (5th Cir. 1996).

Defendants' contention that the Andersons fail to fall within the statute of limitations and Plaintiffs' claims of equitable tolling and fraudulent concealment creates two concerns. The first, which is argued by Defendants, is that the Andersons failed to include any such claim in the Complaint. Plaintiffs have a duty to plead any exception to a statute of limitations bar in their complaint. Kincheloe v. Farmer, 214 F.2d 604, 605 (7th Cir. 1954.) The Court finds this argument is akin to a challenge to the merits of Plaintiffs' claims, and therefore not properly considered in a motion for class certification. However, a second concern directly relates to the typicality prong of Rule 23(a), since this issue is not common to the class and would prejudice other class members if the Andersons' claims were ultimately dismissed or if a considerable amount of time were spent on the equitable tolling issue. Defenses that are unique to a named plaintiff are relevant to the inquiry into whether the plaintiff's claims are typical but are not necessarily dispositive of the issue. See Gaspar v. Linvatec Corp., 167 F.R.D. 51, 58 (N.D. Ill. 1996). Claims that are adverse to other class members or an individual defense that would take a significant amount of time may destroy typicality. See, e.g., J.H. Cohn & Co. v. American Appraisal Associates, Inc., 628 F.2d 994, 999 (7th Cir. 1980).

In order to defeat typicality or adequacy, the specific defense must be "unique, arguable and likely to usurp a significant portion of the litigant's time and energy." McNichols v. Loeb Rhoades & Co., 97 F.R.D. 331, 334 (N.D. Ill. 1982). In this case, the Court finds that these issues will not be so consuming to the Andersons that they will take the focus away from the merits of the case. See Retsky Family Ltd. Partnership v. Price Waterhouse LLP, 1999 WL 543209 (N.D. Ill.) (citations omitted). Furthermore, the Andersons are not the only class representative, and Defendants have

9

raised no challenge to the Teichmans' representation. Therefore, the Court finds that Plaintiffs' satisfy this prong.

### (4) Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." "A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." Rosario, 963, F.2d at 1018. The adequacy of representation requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, ... (2) the named representative must have sufficient interest in the outcome to ensure vigorous advocacy, . . . and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. Gammon v. GC Servs. Ltd. Partnership, 162 F.R.D. 313, 317 (N.D.Ill.1995) (citations and quotations omitted). Defendants do not challenge any these criteria. Plaintiffs' counsel have provided a summary of the qualifications and experience of the attorneys in the law firm. (Pls.' Reply Br., Ex. 1.) Furthermore, the class representatives do not appear to have any interests which are antagonistic to the class, and appear to have a sufficient interest in the outcome to litigate vigorously. The class representatives meet this requirement.

### B. Requirements of Rule 23(b)(3)

Plaintiffs maintain that they also satisfy the requirements for class certification under Rule 23(b)(3). To qualify for certification under Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The predominance question

10

under Rule 23(b)(3) requires the court to determine whether Plaintiffs seek to remedy a common legal grievance. Doe v. Guardian Life Ins. Co. of Am., 145 F.R.D. 466, 475 (N.D.Ill.1992). Common questions of law or fact will predominate when there is a common course of conduct that leads to injury of all the class members. Fietsam v. Connecticut Gen. Life Ins. Co., No. 93 C 916, 1994 WL 323313 at * 5 (N.D. Ill. June 27, 1994). The common issues need not, however, be dispositive of the entire litigation. Doe, 145 F.R.D. at 475; Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D.Ill.1986). The superiority inquiry under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. The underlying purpose of the predominance and superiority requirements is to evaluate whether class certification will have practical utility in the suit. Doe, 145 F.R.D. at 474.

Defendants have raised several claim-specific challenges to the requirements of predominance under Rule 23(b)(3), therefore, the Court looks at each of Plaintiffs' claims separately.

**(1) RESPA**

### (a) Section 8 of RESPA is not Amenable to Class Actions.

Defendants first, and primary, objection to class certification under the predominance requirement is that Plaintiffs' claim under RESPA Section 8 requires an individualized inquiry into each Plaintiff's loan and the services provided by New Dimension pursuant to that loan. For example, Plaintiffs claim they were overcharged by New Dimension for the document preparation and underwriting services they received, however, Defendants argue that, even assuming this is a viable cause of action under RESPA,[4] New Dimension would be entitled to prove in its defense that

---

[4] Defendants claim this does not constitute a violation of RESPA, arguing that it takes two parties sharing fees to violate RESPA, neither one of which can be the borrower. See Durr v. Intercounty Title Co., 14 F.3d 1183, 1187 (7th Cir. 1994). The Court does not reach this

it did provide the goods and services it charged the borrower, and that the amounts charged were reasonably related to the value of those goods and services. (Defs.' Resp. at 21.) Therefore, this claim would turn on an examination of each individual borrower's loan transaction, and would not be amenable to a class action.

Section 8 of RESPA prohibits the receipt or payment of kickbacks or referral fees for the rendering of settlement services. Although Section 8(a) prohibits referral fees, RESPA also provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). Paragraph (c) of Section 8 exempts from those prohibitions the payment of compensation for goods or services which are actually provided: "Nothing in this section shall be construed as prohibiting . . . the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually provided." 12 U.S.C. § 2607(c). Regulation X, 24 C.F.R. § 3500.1 et seq., the rule interpreting RESPA requires disclosure of direct and indirect payments made to mortgage brokers, but does not explicitly state whether a premium paid by the lender to the broker (a "yield spread premium") is per se illegal. See 24 C.F.R. §§ 3500.2, 3500.7, 3500.14. The U.S. Department of Housing and Urban Development (HUD) clarified this issue in RESPA Policy Statement 1999-1, finding that payments of yield spread premiums by lenders to mortgage brokers are not per se illegal, see 64 Fed. Reg. 10084, however it required courts to undertake an individualized, fact-intensive inquiry into whether the payments are

---

argument as it requires a determination of the merits of Plaintiffs' claim which is inappropriate in a motion for class certification.

related to the receipt of goods or services. Id.

Defendants object to certifying a class of plaintiffs under Section 8 of RESPA because Section 8(c) requires the Court to determine whether the fees received by the mortgage broker were reasonably related to their work in each individualized case. In addition to citing to numerous "yield spread premium" cases in which brokers were paid fees by lenders, Defendants also cite to a case in which attorneys were paid fees by a mortgage company. Sicinski v. Reliance Funding Corp., 82 F.R.D. 730 (S.D.N.Y. 1979). In that case, the court found that under Section 8(c) and 24 C.F.R. § 3500.14(e) it would have to "ascertain what services [the attorneys] each rendered in the 303 separate transactions and to decide whether the fees received by each were reasonably related to their work." Id. at 731-32. The court refused to certify the class because common questions did not predominate. Id.

However, under Plaintiffs' theory, the charges for "document preparation" and "underwriting fees" are charges imposed directly by New Dimension on the borrowers. Plaintiffs contend they were charged a flat fee by New Dimension to perform document preparation and underwriting fees, and that these services were actually performed by CTX Mortgage employees for a fee of $800. Plaintiffs further argue a flat fee is only charged to borrowers referred to CTX Mortgage, and not to borrowers referred to other lenders, and that the amounts charged for document preparation and underwriting fees for other lenders is not the same. Under Plaintiffs' theory, the fact that a flat fee is charged only on loans referred to CTX Mortgage, while a different fee is charged to borrowers referred to other lenders, establishes, per se, that these amounts New Dimension charged class members were not for "services actually performed." (Pls.' Reply at 14.)

Plaintiffs do not cite to any cases which provide support for this particular theory, however,

Plaintiffs do cite to one yield spread premium case, <u>Dujanovic v. MortgageAmerica, Inc.</u>, 185 F.R.D. 660, 665 (B.D. Ala. 1999), in which the court determined that certification of the class was proper.[5] In <u>Dujanovic</u>, the district court noted that many courts refuse to certify classes in yield spread premium cases because they require an analysis of the services provided, however, it found the particular circumstances before it to be unique. <u>Id.</u> at 670. In that case, the plaintiffs alleged that the amounts of the payments made to the broker by the lender were solely based upon the interest rate charged: "The defendant mortgage lender, not the broker, funded the loan, and the yield spread premium paid to the broker was determined by the interest rate of the loan. The evidence shows that the broker's services would not have varied had the loan been at or below par value." <u>Id.</u> at 665. In <u>Dujanovic</u>, then, the plaintiffs alleged, and produced supporting evidence, that the amount of the payment made to the broker was directly linked to the rate of interest, but that the interest rate had no bearing on the level and types of services provided.

In this case, Plaintiffs have made no such allegation. There is no evidence before the Court that the amounts charged to the borrowers were unrelated to the types of services provided. Plaintiffs' allegation that only borrowers who were referred to CTX Mortgage were charged the flat fee does not establish on its own that the fees were not related to the types of services performed. This is a factual dispute which must be resolved as to each individual plaintiff, and whether borrowers were charged a reasonable fee may depend upon a number of factors. Furthermore, most

---

[5]Although Plaintiffs assert at the outset in the Reply brief that this is not a yield spread premium case, and that yield spread premium cases do not apply, (Pls.' Reply at 2), the only case cited by Plaintiffs in support of their theory is <u>Dujanovic</u>. While the Court agrees that the facts in this case do not entirely match up with those in a yield spread premium case, they are similar. The analysis employed by Courts in determining whether to grant certification in yield spread premium cases is, therefore, applicable.

courts which have considered the issue of class certification in a yield spread premium cases have held that they are not amenable to class treatment.[6]  Although, as Plaintiffs point out, this is not a classic yield spread premium case, Plaintiffs have not provided the Court with any reason, such as in the Dujanovic case, to come to a different conclusion here.

The Court finds that Plaintiffs have not met the predominance requirement as to this claim.

### (b) New Dimension's Failure to Disclose its Assignment of Plaintiffs' Loans to CTX.

Plaintiffs assert that New Dimension was paid by CTX for the mortgage referrals from the profit CTX received from the collection of interest payments (the "positive carry") and the "service release premiums" it collected when it sold the loans on the secondary market. (Pls.' Reply at 5.) Plaintiffs assert these amounts were paid to New Dimension after the loans were referred to CTX Mortgage, and then some of those amounts were paid back to CTX Mortgage's subsidiary which was then "upstreamed" back to CTX Mortgage. Kimball Hill also received its share of the profits as its partnership draw from New Dimension.  The "net effect," according to Plaintiffs, was that CTX and Kimball Hill split the profit from the initial funding and servicing of the loans.  Since New Dimension and CTX Mortgage were part of an affiliated business arrangement under RESPA, 12

---

[6] See Conomos v. Chase Manhattan Corp., 1998 WL 118154 (S.D.N.Y. March 17, 1998) (plaintiffs could not show that the yield spread premium was not for services without an analysis of which services were provided); Hinton v. First American Mortgage, 1998 WL 111668 (N.D.Ill. March 4, 1998) (plaintiffs conceded that the court would have to determine factual issues concerning the services actually provided and the reasonableness of the fees); Marinaccio v. Barnett Banks, Inc., 176 F.R.D. 104 (S.D.N.Y.1997) (finding "no reason to depart from the rationale" of the other courts that denied class treatment for RESPA claims); Moniz v. Crossland Mortgage Corp., 175 F.R.D. 1 (D.Mass.1997) (class certification was denied after the court had determined on summary judgment that a question of fact existed as to whether the broker received a reasonable amount of compensation in each transaction); Taylor v. Flagstar Bank, 181 F.R.D. 509 (M.D.Ala.1998) ("individualized findings" would be required in order to determine whether the yield spread premium was illegal).

U.S.C. § 2602(7), any referral of any class member by New Dimension to CTX Mortgage for a settlement service had to be accompanied by a § 2607(c) written disclosure statement, which Defendants admit was not provided.

Defendants contend that CTX Mortgage's purchases of the loans were secondary market transactions which are not covered by RESPA. (Defs.' Resp. at 20.) Plaintiffs are correct, however, that this argument implicates a factual dispute between the parties, which is not appropriately resolved in a motion for class certification. However, Plaintiffs arguments as to the damages on this claim demonstrate that individual issues would predominate as to this claim. Plaintiffs argue that: "Damages are simply 'three times the amount of any charge paid for such settlement service.' 12 U.S.C. § 2607(d)(2). The "settlement service" provided by CTX Mortgage is the funding of the loans, and the "charge" for that service is the interest it collected while it owned the loans." (Pls.' Reply at 8.) Plaintiffs argue that they were paying a higher rate of interest because New Dimension failed to disclose that CTX was the source of the funds. (Pls.' Mot at 10.) This formulation of damages, would require an examination of each borrower's circumstances to determine if any class member would have received a better rate than the one obtained through New Dimension.

Therefore, because of the individualized inquiry this claim would require when determining damages, Plaintiffs cannot meet their burden to show that issues common to the class predominate.

### (c) Plaintiffs' Claims Based Upon the ABA Disclosure.

Defendants argue that neither RESPA nor Regulation X state that a settlement service provider may be liable if the estimate of fees in an ABA disclosure differs from the fees actually charged and disclosed on the HUD-1 Settlement Statement at closing. Furthermore, Defendants argue, even if there was a private right of action for underestimating the fees, the right could only

16

be litigated on a case-by-case basis. According to Defendants, New Dimension operated out of six different offices around the country: Chicago, Illinois; Tampa, Florida; Vancouver, Oregon; Austin, Texas; Houston, Texas; and Sacramento, California. In each of these areas, Kimball Hill used different forms of ABA disclosures which changed over time and which contained different fees for different services. Defendants argue that there were a number of borrowers who paid closing costs that were equal to or less than the estimates set forth in the ABA disclosure, and, citing to Taylor v. Flagstar Bank, FSB, 181 F.R.D. 509, 523 (N.D. Ala. 1998), maintain that where a defendant can prove even in a single transaction that there has been no violation then class certification is inappropriate. (Defs.' Resp. at 17.)

Plaintiffs respond by stating that "[e]ven if the variation in fees charged is as great as defendants claim, seeing whether or not there has been a violation in each transaction is still as simple as looking at two forms, the regional form § 2607 disclosures and the corresponding settlement statements." (Pls.' Reply at 12.) However, this "simple step" is one which would have to be repeated 786 times for 786 loans, and the fact that Plaintiffs concede the necessity of examining each loan individually belies their argument that common issues predominate. The Court finds that in this claim the predominance requirement is not met.

**(2) UDAP**

In Count II of their Complaint, Plaintiffs allege claims under the uniform state deceptive business acts and practices statute (UDAP) for each state where a putative class member resides. This claim would invoke the UDAP statutes of six states: Illinois, Texas, California, Florida, Washington, and Oregon. (Pls.' Compl. ¶ 42.)

Defendants make several arguments as to why these claims should not be certified.

17

Defendants first claim that to the extent Plaintiffs' claims under RESPA cannot be certified they also cannot be certified under any state deceptive business practices statutes as those claims are derivative of RESPA. Defendants next argue that Plaintiffs have not set forth the elements of any state's UDAP statute to determine if proof of those elements may be made on a class-wide basis, and maintain that many of the UDAP statutes require consideration of the facts of each individual loan transaction, particularly noting the proximate cause requirement of the Illinois Consumer Fraud Act (ICFA). (Defs.' Resp. at 25-26, Sur-Reply at 8-9.) Defendants finally argue that numerous courts, including the United States Supreme Court, have held that claims arising under numerous state laws are unmanageable in the context of a nationwide class action. Amchen Products v. Windsor, 521 U.S. 591, 624 (1997). Plaintiffs respond primarily to the latter argument, claiming that a review of the case law suggests that certification is appropriate here because the consumer fraud claims are appended to a federal claims, and that applying the consumer fraud claim is not an unmanageable task when only six states are involved. (Pls.' Reply at 16-19.)

However, unlike the cases cited by Plaintiffs which certified class claims based arising under numerous states' laws, there are no "common questions of federal law," see Elliott v. ITT Corp., 150 F.R.D. 569 (N.D. Ill. 1992), upon which to append Plaintiffs' state law class claims, as the Court has found that Plaintiffs' federal RESPA claims do not meet the requirements for class certification under Rule 23(b)(3). Therefore, the Court finds that it is not appropriate to certify the pendent state law UDAP claims.

**(3) Breach of Fiduciary Duty**

In Count III of their Complaint, Plaintiffs allege a breach of fiduciary duty claim against New Dimension and CTX Ventures, and further allege that CTX Mortgage is liable for participating on

18

the breach. Defendants argue that Plaintiffs' fiduciary duty claims are fact-intensive and should not be certified. (Defs. Resp. at 27.) Defendants assert that to establish a breach of fiduciary duty, plaintiffs must first establish the existence of a fiduciary relationship between themselves and each defendant, and that it is "well-settled that a mortgagor-mortgagee relationship does not create a fiduciary relationship as a matter of law." Northern Trust Co. v. Halas, 257 Ill. App. 3d 565, 572 (5th Dist. 1993). When there is no fiduciary relationship as a matter of law, the plaintiff must plead facts from which a fiduciary relationship arises, which Plaintiffs in this case have not done. In fact, Defendants argue, the facts which have been established as to the named Plaintiffs in this case indicate that the Andersons and Teichmans did not have a fiduciary relationship with New Dimension. (Defs.' Resp. at 28.) In any event, according to Defendants, the determination of whether a fiduciary relationship exists is a fact-specific inquiry which requires individual assessment of each Plaintiff's relationship with New Dimension and CTX Ventures. (Id. at 29.)

Plaintiffs assert in response that they are alleging that New Dimension was a mortgage broker, not a mortgage lender, and that many cases have held that mortgage brokers are fiduciaries of the clients whom they claim to represent. (Pls.' Reply at 21.) However, a fiduciary relationship between a mortgage broker and his client does not exist as a matter of law, and its existence depends on whether the broker can be considered to be the plaintiffs' agent. Vargas v. Universal Mortgage Corp., 2001 WL 558045 at *3 (N.D. Ill. May 21, 2001). "The existence of an agent principal relationship rests on factual underpinnings . . . ." Id. (citing Hastings v. Fidelity Mortgage Decisions Corp., 984 F. Supp. 600, 614 (N.D. Ill. 1997)).

Therefore, the Court finds that the existence of a fiduciary relationship between New Dimension and Plaintiffs depends upon an individualized factual inquiry which predominates over

any common issues.[7]

**(4) The Superiority Requirement of Rule 23(b)(3)**

The superiority inquiry under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Defendants argue that the individualized inquiry required by RESPA and the state law claims render a class action unmanageable, and that furthermore, the availability of treble damages under Section 8(d)(3) of RESPA and attorneys' fees for a successful plaintiff under Section 8(d)(5) of RESPA enhances the feasibility of individual claims. (Defs.' Resp. at 30.) Defendants cite to <u>Andrews v. American Telephone & Telegraph Co.,</u> 95 F.3d 1014, 1025 (11th Cir. 1996) for the proposition that the public policy considerations in favor of class actions are mitigated when the plaintiffs are eligible to recover treble damages and attorneys fees if there claims are successful. In response, Plaintiffs cite to cases which hold that the mere fact that plaintiffs may individually recover treble damages and attorneys fees is not a sufficient reason on its own to deny class certification. <u>See, e.g.</u>, <u>Sikes v. American Telephone and Telegraph Co.,</u> 179 F.R.D. 342, 349 (S.D. Ga. 1998); <u>Lonergan v. A.J.'s Wrecker Service of Dallas, Inc.,</u> 1999 WL 527728 at *7 (N.D. Tex. 1999); <u>Buford v. H.R. Block, Inc.,</u> 168 F.R.D. 340, 362 (S.D. Ga. 1996).

The Court agrees that the fact that Plaintiffs may individually recover treble damages and attorneys fees does not, alone, justify denial of class certification. However, the availability of such relief to plaintiffs bringing individual suits does reduce the force of the public policy arguments which normally favor class action lawsuits, and further bolsters this Court's conclusion that this class should not be certified under Rule 23(b)(3).

---

[7] The Court's rationale for not certifying the Breach of Fiduciary Duty claim similarly applies to Plaintiffs' Participation in Breach of Fiduciary Claim (Count IV).

## IV. CONCLUSION

Because Plaintiffs cannot satisfy the requirements of Federal Rule of Civil Procedure 23(b)(3), the Court recommends that Plaintiffs' Motion for Class Certification be DENIED.

Any objections to this Report and Recommendation must be filed with Clerk of the Court within ten (10) days of receipt of this notice. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995).

**E N T E R:**

_Nan R. Nolan_

Nan R. Nolan
**United States Magistrate Judge**

**Dated:**    AUG 0 6 2001